## Case No. 7,019.

In re INDEPENDENT INS. CO.

Ex parte NICKERSON.

[2 Lowell, 187; 7 Am. Law Rev. 362.] [1]

District Court, D. Massachusetts. Nov., 1872.

J. O. Teele, for the motion.
B. Sanford, for the insured.

LOWELL, District Judge. It is said that a very great number of claimants, whose debts are each trifling, stand ready to prove them against the assets in this case, if it shall be decided that this proof was well made; and that the mere cost of proving, if assessed on the fund under a construction of rule 30 of the supreme court, which some persons contend for, will amount to thousands of dollars (more than twenty thousand dollars), if all such creditors should prove their debts, making a most serious and intolerable diminution of the assets. This rule is said to allow for affidavits in proof of debts, the price chargeable for examinations, and to make those charges a lien on the fund. I doubt whether the rule is intended to apply to the ordinary affidavit in proof of debts, which, although in some parts of the law called a deposition, resembles rather an affidavit than an examination or deposition such as the rule contemplates. But if the charges, whether greater or less, are necessarily incurred in proving debts of a

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission. 7 Am. Law Rev. 362, contains only a partial report.]

dollar or of a very few dollars, it is evident that the creditors will forego their proofs, unless the costs are a charge on the fund; and, if they are a charge, it will be very burdensome, however small each fee may be. This is a very unfortunate state of things, arising out of the system of payment by fees. It seems to me that the assignees may avoid the dilemma, by admitting such debts to proof without the affidavit. If no creditor objected, such a course of proceeding would be supported on the ground, that, in matters of merely private right, a court may waive points of form, even when prescribed by statute, if all parties interested agree. I lay no claim to a power to set aside the statute or the rules: but I do say that both must be construed, if possible, so as to work out their true intent; and that particular rules of evidence, especially the right to have all evidence given *on oath, may always be waived by the parties, and are constantly waived in all the courts of law and equity. Another course would be to admit all these debts under one affidavit, or a few affidavits, of the officers of the company, who are as well acquainted with the facts as the several persons insured. This has been done, as I am informed, in a case before one of the registers, Mr. Thorndike, whose experience (part of which was acquired in an office which he held under the insolvent law of Massachusetts) has been very great. Doubtless, a way may be found, and must be found, if possible, to prevent the expenses of administration from being an intolerable burden on the assets, or on the several creditors.

· The debt offered for proof in this case is large enough to take it out of any such list as is above referred to; and must be allowed, if it is found to be a provable debt, whatever may be the consequences to other persons. I understand the main objection to be, that the premium which was paid for four years in advance formed part of a fund which is in some way pledged or devoted to the payment of losses. No decisions were cited for this position. That there are many cases holding such a doctrine in regard to the notes given to mutual insurance companies as a guarantee, I am well aware; but those were cases where, by the charters of the companies, or by the law under which they were organized, or by express contract, such notes formed a sort of capital for the security of losses. Brouwer v. Appleby, 1 Sandf. 158; Hone v. Allen, Id. 171, note; Deraismes v. Merchants' Mut. Ins. Co., 1 Comstock [1 N. Y.] 371; White v. Haight, 16 N. Y. 310; Maine Mut. Ins. Co. v. Swanton, 49 Me. 448. These are a few of the decisions. There are others in many courts; but I know of none that hold stock companies to any such rule. The deposit notes, or whatever else they may be called, of mutual companies, represent stock; and are liable to assessment, in whole or in part,

under the rules and by-laws by virtue of which they are given: but I have found nothing in the charter of the Independent Insurance Company, nor in the general laws of Massachusetts regulating stock companies, which impresses any such character upon notes or payments given to such a company for premiums to be earned in the future. No by-law of the company was invoked to aid the petition; and I suppose none such exists. The money was paid in accordance with the terms of the policy, one of which was that a part should be repaid if the assured should at any time elect to cancel their policy. If such a stipulation had not been made, it is impossible to say, judicially, that the money would ever have been advanced.

I see no good reason to say that the actual insolvency of the company, before bankruptcy, would discharge this covenant, or render its performance illegal. No evidence has been given even that the cancellation of the policy would work any injury to the other policy holders. It may well be that a cancellation of all the policies on which no loss had been suffered would be advantageous. It would certainly have the effect to fix the exact liabilities of the company, and might be a prudent measure. I do not know how many policies in this company were cancelled, nor when or by whom. Upon those not cancelled the assets would remain liable for losses, until the final dividend shall be declared. A mutual insurance company that had become insolvent, and had been enjoined from continuing its business, cancelled all its outstanding policies, in virtue of a by-law much resembling the stipulation in this contract, and with the consent of the supreme court of Massachusetts, before whom the case was pending; and the court afterwards held that the return premiums were just debts to be paid out of the deposit notes. Fayette Mut. Fire Ins. Co. v. Fuller, 8 Allen, 27. But, apart from that consideration, there is no possible ground, that I can perceive, for saying that the surrender of the policy by the assured, in accordance with his contract, was intended to be, or could be, a preference of the assured over the other creditors, when its only effect is to put him on the same footing with other creditors. If a note is payable, or any duty is to be performed, on demand, I know of nothing in the bankrupt law which prohibits a demand being made after insolvency, in order to fix the rights of the parties, whether in the payment of interest or any thing else. It was an act which the assured had a right to do, with or without good reason, whenever they pleased.

Some question was made upon the construction of the policy, and whether the assured had brought themselves within its terms. It is clear that the stipulation, that the company will retain a certain part of the premium in case of the surrender of the

policy, implies by necessary intendment that they will return the remainder; and there is no more doubt that the surrender by the assured needs no acceptance by the company to give it full effect. When the memoranda were indorsed upon the policy, and they were received and retained by the company, without objection as to form, the surrender was complete, and the rights of the parties were fixed.

Questions which were alluded to in argument, and were said to be of great importance at this time,—such as, whether, in the absence of a stipulation in the policy or in the charter or by-laws, there would be any right to a return of premium under any and what circumstances; whether the office or its assignee could cancel its policies after bankruptcy, or even after insolvency, without an order of court; whether the assured could do so after bankruptcy without such order,—are not material in this case, and have not been considered. Petition to expunge denied.